## HILTON RAY BAINES *v.* STATE OF MARYLAND

[No. 15, September Term, 1977.]

*Decided October 14, 1977.*

506

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*Charles E. Foos, III, Assigned Public Defender,* for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Jeffrey Himmelstein, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

In a non-jury trial in the Circuit Court for Baltimore County (Proctor, J., presiding), appellant was found guilty on two separate charges of burglary and one charge of attempted daytime housebreaking. He received concurrent ten year sentences on the burglary convictions and a five year concurrent sentence on the attempted housebreaking conviction.

In this appeal appellant first contends that the trial judge committed reversible error "by improperly entering guilty verdicts without first affording the Appellant's counsel the right to argue the merits of his case."

At the conclusion of the state's case, appellant moved for a judgment of acquittal, which motion was denied. Appellant was then advised of his right to testify or remain silent and he elected not to testify. The records reads as follows:

> "MR. KINSLEY [Counsel for Defendant]: * * * Knowing your constitutional right to remain silent or to testify, would you like to testify or remain silent?
>
> DEFENDANT: Remain silent.

MR. KINSLEY: Remain silent. The Defense rests, and I'd like to be heard briefly —

THE COURT: The testimony is clear that these purses were taken for Linda Matthews. The testimony is also clear that, in my judgment, everybody admits, she knew and even Mr. Baines [appellant] himself testified he willingly made a statement to Officer Kiblin, and the statement to Officer Kiblin was that he knew these purses, he could not be sure from what apartment he had gotten the purses which is understandable, but he knew that he had gotten these purses by breaking and entering. The one purse was clearly identified by Mrs. Hartsel as her purse. The fact that it had the initials L.M. in it does not affect the fact that the purse was clearly identified, and is the type of purse that is easily identifiable. So you run all of this together which proves guilty beyond a reasonable doubt, in my judgment. He also had an attempted breaking and entering in the Fields case, which is also proved, in my judgment."

It is in this factual posture that appellant contends that the trial judge improperly entered guilty verdicts without first affording appellant's counsel the right to argue his case. We agree.

The state relies heavily upon the recent holding of this Court in *Covington v. State,* 34 Md. App. 454 (1977).[1] Chief Judge Gilbert, writing for a majority of the Court in *Covington,* stated, at 465:

"We observe that in the instant case neither the appellant nor his counsel raised, at trial, any issue of a denial of argument of the law applicable to the agreed facts. Thus the issue is raised for the first time on appeal. Maryland Rule 1085 provides that we should not ordinarily decide *any* issue which

---

1. Certiorari was granted by the Court of Appeals and the case is scheduled for argument October 4, 1977.

'does not plainly appear by the record to have been tried and decided by the lower court[.]'

Notwithstanding Maryland Rule 1085, we reversed the trial court in *Moore, supra,* [2] even though the issue of argument by counsel was not raised in the trial court. While Md. Rule 1085 was invoked by the State in its brief in *Moore,* we did not address the point. We believe Moore's articulation of the right of counsel to be correct, but we should not have considered the matter on direct appeal because it was not raised nor decided in the trial court. Md. Rule 1085. To the extent that *Moore* indicates that the issue may be presented for the first time on appeal, *Moore* is expressly overruled." (Citations omitted.)

The state argues that in the case at bar, as in *Covington,* the "question is not properly before this Court for review because the issue 'does not plainly appear by the record to have been tried and decided by the lower court.' Md. Rule 1085; *Covington v. State, supra.*" It is further suggested that the state "does not believe that the trial court affirmatively denied Appellant or his counsel the right to argue the merits of the case" and, therefore, "the case at bar is distinguishable from *Yopps v. State,* 228 Md. 204 (1962), upon which Appellant relies." *Yopps* makes it clear, at 207:

"The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny accused such right."

We cannot agree with counsel for the state that the rule of *Yopps* was waived because the trial court did not

2. Moore v. State, 7 Md. App. 330 (1969).

affirmatively deny appellant or his counsel the right to argue. The record is perfectly clear that appellant's counsel, after resting his case, announced: "* * * and I'd like to be heard briefly." Even the most uninitiated in trial practice would recognize that counsel for appellant was requesting an opportunity to present an argument on the evidence and law of the case. The trial judge, however, ignored the request and proceeded to announce his decision. Under the circumstances, we cannot subscribe to the state's argument, in essence, that it is incumbent upon counsel or appellant to enter into a verbal affray with the court in order to preserve appellant's right to raise the issue on appeal.

No matter how convincing the evidence of appellant's guilt may appear to be, it is crystal clear that he was denied his constitutional right "to have his counsel make a proper argument on the evidence and the applicable law in his favor * * *." *Yopps, supra,* at 207. Accordingly, the judgments of conviction will be reversed and the case remanded for a new trial.

At the request of appellant, his appellate counsel advanced the contention that statements appellant gave a police officer were improperly admitted into evidence. Officer John Kiblin testified that he interviewed appellant after he had been arrested on a charge of rape which charge was subsequently dismissed. He stated that appellant was advised of his *Miranda* rights [3] and expressly waived them. He explained that two other officers had questioned appellant concerning the rape, but he interrogated appellant only about the burglary and housebreaking charges.

Appellant then took the stand and said that Officer Kiblin had been nice to him but the two other officers who questioned him about the rape had hassled him and indicated that if he pleaded guilty to the burglary charges the rape charge would be dropped. Under questioning by the trial judge appellant conceded he told Officer Kiblin "that I would give it [the statement] to him on my own free will but I was all upset." Officer Kiblin was recalled to the stand and

---

[3]. Miranda v. Arizona, 384 U. S. 436 (1966).

testified that appellant told him he had committed the offenses with which he was ultimately charged.

Appellant's reliance on *Streams v. State,* 238 Md. 278, 283 (1965), is misplaced. In *Streams* the Court of Appeals held:

> "We think the State's failure, after Streams left the stand, to go forward with testimony which would refute his claim of promises and threats and to show the conduct of the police during the period he was in custody of the arresting officers was enough under the circumstances of this case to require a holding that the judgments appealed from must be reversed because the State did not meet its burden of establishing the voluntariness of the confessions as a prerequisite to their admission in evidence."

Here the state not only met its burden of establishing the voluntariness of appellant's statement to Officer Kiblin, but appellant himself acknowledged that the statement was given "on my own free will." The fact that he was "all upset" could appropriately describe almost anyone who gives an inculpatory statement and does not alter appellant's concession that his statement was voluntary. The contention is without merit.

> *Judgments reversed; case remanded*
> *for a new trial; costs to be paid by*
> *Baltimore County.*